IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUAN DIAZ, JR., | : | |
| Plaintiff, | : | 1:16-cv-1905 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| KEVIN PIGOS, DOCTOR/ | : | |
| CLINICAL DIRECTOR, *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM

**September 27, 2017**

Juan Diaz, Jr. ("Diaz" or "Plaintiff"), an inmate currently formerly confined at the United States Penitentiary at Lewisburg ("USP-Lewisburg), Pennsylvania, filed this *Bivens*[1] action on September 19, 2016. (Doc. 1). Diaz alleges that Defendants Dr. Kevin Pigos ("Pigos") and Physician's Assistant Ferdinand Alama ("Alama") denied him medical wrist braces necessary to treat his carpal tunnel syndrome. (Doc. 1, p. 2).

Presently before the Court is Defendants' motion (Doc. 10) to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth

---

[1] *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978).

below the motion to dismiss will be granted in part and denied in part. The motion for summary judgment will be granted.

## I. MOTION TO DISMISS

### A. Standard of Review

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). In reviewing the legal sufficiency of a complaint, the Court must accept the truth of the factual allegations. *Morrison v. Madison Dearborn Capital Partners III L.P.*, 463 F.3d 312, 314 (3d Cir. 2006). Notably, the assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. The controlling question is whether the complaint "alleges enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555 (rejecting the "no set of facts" language from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) and requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"); *see also Iqbal*, 556 U.S. at 678 (explaining that Rule 8 requires more than "an unadorned, the-defendant unlawfully-harmed-me accusation"); *see also* Fed. R. Civ. P. 8(a)

(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief").

Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### B.  Allegations of the Complaint

Diaz alleges that Defendant Pigos is the clinical director and doctor at USP-Lewisburg and is responsible for all referrals that are directed to his attention by his subordinates and for conducting surgical consults. (Doc. 1, pp. 2, 3). Defendant Pigos "has been very aware continually through Physician F. Alama," that Mr. Diaz was in need of his medical wrist braces [to treat his serious carpal tunnel syndrome] that were approved for Diaz to have by outside physicians and doctors." (*Id.* at 3). He alleges that he was denied the braces from January 21, 2015, through July 18, 2016. (*Id.*)

### C.  Discussion

A *Bivens* action is the federal counterpart to an action filed under 42 U.S.C. § 1983. *See Paton v. LaPrade*, 524 F.2d 82 (3d Cir.1975); *Farmer v. Carlson*, 685

F. Supp. 1335, 1338 (M.D.Pa. 1988). Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

*Id.; see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002*); Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

      1.    <u>Official Capacity</u>

Defendants first seek dismissal of the *Bivens* claim to the extent that it is brought against them in their official capacities. In the "Relief" section of the complaint, Diaz states that he is suing the Defendants in their individual capacity. (Doc. 1, p. 3). Inasmuch as any portion of the complaint is brought against Defendants in their official capacity, dismissal of the complaint is appropriate. It is well-settled that a suit against a federal official in his official capacity is a suit

4

against the United States and the United States has not waived sovereign immunity for claims brought against federal officials in their official capacity, *FDIC v. Meyer*, 510 U.S. 471, 484-87 (1994), *see also Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 395 (3d Cir. 2012).

### 2. Personal Involvement

Individual liability will be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). Liability "cannot be predicated solely on the operation of *respondeat superior*." *Id.* In other words, defendants in civil rights actions "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence." *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003); *Rode*, 845 F.2d at 1207-08. Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. When a plaintiff merely hypothesizes that an individual defendant may have had knowledge of or personal involvement in the deprivation of his or her rights, individual liability will not follow. *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08.

Defendants argue that "to the extent Diaz is attempting to hold Dr. Pigos liable on the basis of his former position as the clinical director USP Lewisburg, the Supreme Court eliminated the theory of supervisory liability from <u>Bivens</u> suits…" (Doc. 13, p. 8). Diaz alleges that Defendant Pigos was involved in all referrals and surgical consults and that he was aware continually "through Physician F. Alama," that he was in need of preapproved medical wrist braces that to treat his serious carpal tunnel syndrome. (Doc. 1, p. 2). These allegations, though vague, sufficiently allege personal involvement on the part of Defendant Pigos and warrant denial of the motion to dismiss on this ground.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)

(emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.*; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 F. App'x. 177, 179 (3d Cir. 2008). The party opposing the motion must produce evidence to show the existence of every

element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" *Picozzi v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

**B.     Statement of Material Facts**

Diaz was housed at USP Lewisburg from January 20, 2015, through July 18, 2016. (Doc. 12, ¶ 2). Defendant Dr. Kevin Pigos ("Pigos") was employed as the Clinical Director at USP-Lewisburg from June 24, 2009 to October 15, 2016. (*Id.* at 4). Diaz arrived at USP-Lewisburg on January 20, 2015. (*Id.* at 5). Upon his arrival at USP Lewisburg, he was prescribed medication Gabapentin for treatment of the symptoms of carpal tunnel syndrome (CTS). (*Id.* at 6). During Defendant Pigos's January 21, 2015 assessment of Diaz, Diaz complained of tingling in his

hands and feet. (*Id.* at 7, 8). Pigos noted that Diaz had a previous abnormal electromyography (EMG) and increased the Gabapentin dosage. (*Id.* at 9, 10). Diaz contends that during this assessment, he addressed his need for a wrist brace and that Pigos informed him that he was not allowed such a device in the Special Management Unit. (Doc. 14, p. 2; Doc. 14-1). There is no record of this request in the medical records. (Doc. 12-1, pp. 35-38).

Over the course of the next several months, Physician Assistant Ferdinand Alama ("Alama"), submitted a number of requests to effectuate renewal of Diaz's prescription for Gabapentin. (Doc. 12, ¶¶ 11, 13, 14).

On February 17, 2015, Diaz requested an evaluation of numbness in his hands and feet. (*Id.* at 12; Doc. 14, p. 2). Diaz contends that he also requested a wrist brace during this visit. (Doc. 14, p. 2). There is no record of this request in Alama's notes of that date. (Doc. 12-1, pp. 32, 33).

On September 1, 2015, Defendant Pigos referred Diaz to an orthopedic surgery consultant for an evaluation of his CTS symptoms based on his complaints of numbness and tingling in both hands, neck pain, and an abnormal nerve conduction and EMG study done in August 2014. (Doc. 12, pp. 15, 16). Defendant Alama submitted a consultation request that was reviewed and approved by the Utilization Review Committee (URC) on September 11, 2015. (*Id.* at 17).

On October 15, 2015, Defendant Alama noted that Diaz was requesting an increase in his Gabapentin prescription for a tingling sensation in both hands and his fingers and consulted with Defendant Pigos. (*Id.* at 18, 19). Defendant Pigos conveyed to Defendant Alama that he would assess Diaz at his next chronic care clinic. (*Id.* at 20).

On November 3, 2015, Diaz was examined in-house by an orthopedic surgery consultant, Dr. Ball. (*Id.* at 21). Dr. Ball diagnosed mild to moderate cervical stenosis at C5-6 and carpal tunnel syndrome on the right and left and recommended a Medrol Dosepak and follow up consult in two to three months. (*Id.* at 22, 23). In accordance with Dr. Ball's recommendation, Diaz was prescribed methylprednisolone tablets and a two to three month follow up consult was requested. (*Id.* at 24).

During a November 13, 2015, chronic care assessment, Diaz informed Pigos that the Gabapentin was not as strong as it used to be and it was only taking away some of the pain. (*Id.* at 26, 27). Pigos changed the prescription to increase the dose of Gabapentin but noted it was the maximum dose and there would be no further dose escalation. (*Id.* at 28). Diaz indicated that he understood and agreed that the increased dosage of Gabapentin was the maximum dose. (*Id.* at 29).

On February 2, 2016, during his follow-up examination, Dr. Ball noted that Diaz presented with neck pain and tingling in both hands and decreased sensation in digits 1, 2, and 3 in both hands and that the Prednisone provide only minimal relief of these symptoms. (*Id.* at 30-33). Based on these symptoms, and a January 13, 2014 MRI, which showed C5-6 right disc herniated nucleus pulposus, and an August 25, 2014 EMG that revealed CTS on the left and C5-6 radiculopathy on the right, Dr. Ball recommended orthopedic surgery for CTS on the left hand. (*Id.* at 34, 35). A request for the CTS surgery was submitted and later approved. (*Id.* at 36, 37).

On June 8, 2016, blood was drawn for Diaz's upcoming procedure. (*Id.* at 40, 41). On July 14, 2016, Diaz signed a Medical Treatment Refusal form refusing the surgery. (*Id.* at 42). The Medical Treatment Refusal form explained that the carpel tunnel release surgery was recommended to treat the CTS in Diaz's left hand. (*Id.* at 43). Diaz signed the form acknowledging that because, of his refusal to accept treatment, he could suffer sensory deficits. (*Id.* at 44). Diaz was transferred to the United States Penitentiary #1 at Coleman, Florida on July 18, 2016. (*Id.* at 1. 2).

## C. Discussion

For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility,* 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Deliberate indifference has been found where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. Only egregious acts or omissions can violate this standard. *See White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990).

Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. . . ." *Estelle*, 429 U.S. at 106. "Allegations of medical malpractice are not sufficient to establish a

12

Constitutional violation." *Spruill*, 372 F.3d at 235. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a civil rights cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *See Durmer*, 991 F.2d at 69.

In addition, mere disagreements between the prisoner and the treating physician over medical treatment do not rise to the level of "deliberate indifference." *See Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987); *Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D.Pa. 1988). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979), *United States ex rel. Walker v. Fayette County*, 599 F.2d 573, 575 n. 2 (3d Cir. 1979); *Little v. Lycoming County*, 912 F. Supp. 809, 815 (M.D.Pa.), *aff'd*, 101 F.3d 691 (3d Cir. 1996.) "[T]he key question . . . is whether defendants have provided plaintiff with some type of treatment, regardless of

whether it is what plaintiff desires." *Farmer*, 685 F. Supp. at 1339 (citation omitted).

The crux of Diaz's complaint is that over the course of approximately eighteen months, while he was housed at USP-Lewisburg, Defendants Pigos and Alama denied him wrist braces for his CTS. There is not a single reference to a request for wrist braces contained in the record and Diaz provides no support for his allegations. The party adverse to summary judgment must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989). Diaz fails to meet his burden. He fails to come forth with any credible evidence that would indicate that Defendants intentionally withheld medical treatment, *i.e.* denied him timely and appropriate treatment and, in doing so, inflicted pain or harm upon him. *See Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); *Rouse*, 182 F.3d at 197. In fact, the record indicates to the contrary. Diaz was provided consistent and thorough care for his CTS including, *inter alia*, administration of pain medication and steroid therapy, diagnostic tests including MRIs and EMGs, surgical consult and follow-up consult, and an offer of surgery to relieve his pain and symptoms.

Courts will not second guess whether a particular course of treatment is adequate or proper. *See Parham v. Johnson*, 126 F.3d 454, 458 n.7 (3d Cir. 1997) (quoting *Inmates of Allegheny Cnty. Jail*, 612 F.2d at 762). *See also, e.g., Gause v. Diguglielmo*, 339 F. App'x 132, 136 (3d Cir. 2009) (a dispute over the choice of medication does not rise to the level of an Eighth Amendment violation); *Rush v. Fischer*, No. 09-9918, 2011 WL 6747392, at *3 (S.D.N.Y. 2011) ("The decision to prescribe one form of pain medication in place of another does not constitute deliberate indifference to a prisoner's serious medical needs.").

Based on the foregoing, Defendants are entitled to an entry of summary judgment.

## VI. **CONCLUSION**

Based on the foregoing, Defendants' motion (Doc. 10) to dismiss will be granted in part and denied in part. The motion for summary judgment will be granted.

An appropriate Order will issue.